IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| SHERRI A. ELLIOT,               )<br>                                          )<br>         Petitioner,              )<br>                                          )<br>v.                                     )   No.  3:16-CV-504-TWP<br>                                          )          3:14-CR-085-TWP-CCS-5<br>UNITED STATES OF AMERICA,  )<br>                                          )<br>         Respondent.            ) | |

## MEMORANDUM OPINION

Before the Court is Sherri A. Elliot's ("Petitioner's") *pro se* motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 786].[1] The United States responded in opposition. [Doc. 6]. For the reasons below, Petitioner's § 2255 motion [doc. 1; crim. doc. 786] will be **DENIED**.

### I.  BACKGROUND

In 2014, Petitioner was charged in a 21-defendant, 24-count indictment with: (1) conspiracy to manufacture 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 (Count 1); (2) conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 (Count 2); and (3) possession of equipment, chemicals, products, and

---

[1] Document numbers not otherwise specified refer to the civil docket.

materials used to manufacture methamphetamine, in violation of 21 U.S.C. § 843(a)(6) (Count 7). [Crim. Doc. 90].

Petitioner entered into a written plea agreement, in which she agreed to plead guilty to Count 1 of the indictment, which charged her with conspiracy to manufacture 50 grams or more of methamphetamine. [Crim. Doc. 117 at 1]. As part of the plea agreement, Petitioner agreed to the following factual basis. [*Id*. at 2]. Between January 2008 and July 2014, she conspired with at least one other person to manufacture 239.64 grams of actual methamphetamine. Petitioner purchased pseudoephedrine pills and provided them to her co-conspirators for use in manufacturing methamphetamine. She also personally engaged in manufacturing methamphetamine both alone and with her co-conspirators. Based on pharmacy records, she purchased 479.28 grams of pseudoephedrine between January 2006 and November 2013. [*Id*.]. At some point, Petitioner spoke to law enforcement officers, and admitted that all of the pseudoephedrine that she had purchased in the 12 months prior had gone to one of her co-defendants for use in manufacturing methamphetamine. [*Id*. at 3]. In total, she admitted to purchasing 479.28 grams of pseudoephedrine which she provided to co-defendants and used to manufacture a "conservative estimate" of 239.64 grams of actual methamphetamine. [*Id*. at 4].

In the plea agreement, the government agreed not to oppose a reduction under the Sentencing Guidelines for acceptance of responsibility. [*Id*. at 5]. Moreover, the plea agreement contained both an appeal and collateral attack waiver. [*Id*. at 7]. As to the collateral attack waiver, Petitioner retained only "the right to raise . . . claims of ineffective

assistance of counsel or prosecutorial misconduct not known to the defendant by the time of the entry of judgment." [*Id*.].

At the plea hearing, Petitioner stated that she did not have any mental health issues, was not under the influence of drugs or alcohol, and understood what was happening. [Crim. Doc. 228 at 4]. Petitioner informed the court that she had told her lawyer everything she knew about the case, believed that her lawyer was fully aware of all the facts, and had discussed her possible defenses with her lawyer. [*Id*. at 5-6]. Petitioner stated that she was happy with the advice her attorney had provided. [*Id*. at 6]. The court then reviewed various rights that Petitioner would forfeit by pleading guilty. [*Id*. at 7-8]. Petitioner stated that no person had put any pressure on her to plead guilty, and no person had promised or suggested that she would receive a lighter sentence by pleading guilty. [*Id*. at 8].

Petitioner specifically confirmed that she understood that she was admitting to purchasing 479.28 grams of pseudoephedrine, which was used to manufacture at least 239.64 grams of actual methamphetamine. [*Id*.]. She also stated that she understood that she was waiving her right to appeal or collaterally attack her sentence. [*Id*. at 8-9]. The court summarized the provisions, and exceptions to, both the appeal and collateral attack waivers, and Petitioner confirmed that she understood. [*Id*. at 9-10]. During its summary of the offense, the government again stated that Petitioner purchased 479.28 grams of pseudoephedrine between January 2006 and November 2013, which she provided to her co-defendants to manufacture at least 239.64 grams of actual methamphetamine. [*Id*. at 12, 14]. Petitioner stated that she agreed with the government's summary. [*Id*. at 14]. The

3

court found the Petitioner competent to plead guilty, and accepted her guilty plea. [*Id*. at 18].

At sentencing, the court found that Petitioner's advisory guideline range was 140 to 175 months' imprisonment. [Crim. Doc. 663 at 1]. The court nonetheless concluded that a downward departure was appropriate under U.S.S.G. § 5K1.1, based on the Petitioner's substantial assistance. [*Id*. at 2]. The court ultimately sentenced Petitioner to a total term of 86 months' imprisonment. [Crim. Doc. 662]. The judgment of conviction was entered on August 10, 2015. [*Id*.]. Petitioner filed the instant § 2255 motion on August 9, 2016. [Doc. 1; Crim. Doc. 786].

## II. STANDARD OF REVIEW

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct her judgment of conviction and sentence if she claims that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *See*

*Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that applies in habeas cases alleging constitutional error). In order to obtain collateral relief under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a defendant files a § 2255 motion, she must set forth facts which entitle her to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that she is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A motion that merely states general conclusions of law, without substantiating the allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d

5

at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

### III. ANALYSIS

#### A. Collateral Attack Waiver

As a preliminary matter, the government asserts that Elliot explicitly waived her right to file a § 2255 motion except for claims of ineffective assistance of counsel not known to her at the time of the entry of judgment, and her current claims involve conduct known to her before the entry of judgment. [Doc. 6 at 5]. Accordingly, the government asserts that her § 2255 motion should be summarily denied. [*Id*.].

When a defendant knowingly, intelligently, and voluntarily waives the right to collaterally attack her sentence, she is precluded from bringing a claim of ineffective assistance of counsel under 28 U.S.C. § 2255. *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001). A waiver in a plea agreement is generally considered knowing and voluntary if a defendant testified that her guilty plea was not coerced and that she reviewed and understood the agreement terms. *Id*. An exception to the general rule exists if the collateral attack concerns the validity of the waiver itself. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). However, in situations where the § 2255 motion does not articulate a basis for attacking the validity of the waiver, the Sixth Circuit and lower courts within the Circuit have upheld collateral attack waivers if the waivers were knowing and voluntary. *Watson v. United States*, 165 F.3d at 486, 489 (6th Cir. 1999); *United States v. Eversole*, No. 6:05-cr-34, 2010 WL 420067, at *2, n.3 (E.D. Ky. Feb. 1, 2010).

In this case, Petitioner signed a Plea Agreement containing the following waiver provision:

> [T]he defendant knowingly and voluntarily waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack the defendant's conviction and/or resulting sentence. The parties agree that the defendant retains the right to raise, by way of collateral review under § 2255, claims of ineffective assistance of counsel or prosecutorial misconduct not known to the defendant by the time of the entry of judgment.

[Criminal Doc. 117 at 7]. At Petitioner's change-of-plea hearing, the Court reviewed the waiver provision and verified that Petitioner understood the meaning of the waiver. [Doc. 228 at 9-10]. The Supreme Court has held that "the representations of the defendant, h[er] lawyer, and the prosecuter at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings," and "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Petitioner admitted that she understood the terms of the waiver provision, and nothing in the record suggests otherwise.

Moreover, Petitioner does not challenge the validity of the actual waiver, suggest that she did not understand the waiver, or claim that she did not sign it voluntarily. Accordingly, because Petitioner is not attacking the validity of the plea itself, and because she expressly waived the right to collaterally attack her conviction or sentence based on claims of ineffective assistance of counsel known to her at that time, her instant ineffective assistance claims, all of which relate to pre-plea conduct, are barred by the knowing and voluntary waiver contained in the binding Plea Agreement. *See Davila*, 258 F.3d at 451.

Accordingly, Petitioner's Claims 1-3 will be **DENIED** as barred by her collateral attack waiver. However, as discussed below, these claims alternatively fail on the merits.

### B. Merits

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for h[er] defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a movant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

To prove deficient performance, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what she "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Claims 1 and 2:

In Claim 1, Petitioner asserts that her counsel was ineffective in failing to investigate after she informed him that her identification had been stolen, and she believed that some of the Sudafed purchases that were attributed to her were a result of the stolen identification. [Doc. 1 at 4]. Petitioner states that she repeatedly reported the stolen identity, and requested numerous times to be shown a printout with the signatures from each Sudafed purchase under her name. [Doc. 2 at 2]. She states that her counsel refused to discuss this possible defense with her, and instead wanted to discuss his own personal problems, including his mental health and substance abuse issues. [*Id*. at 3].

In Claim 2, Petitioner asserts that her counsel was ineffective in failing to form a defense, even though the quantity of Sudafed purchases attributed to her was incorrect. [Doc. 1 at 5]. Petitioner argues that, had counsel investigated this defense, her sentence would have been considerably lower. [*Id*.]. Petitioner notes that she does not deny the purchase of Sudafed, but that if counsel had properly investigated the quantity, the amount of Sudafed attributable to her would have been only a personal use quantity. [Doc. 2 at 3].

9

The government responds that Petitioner pleaded guilty to conspiracy to manufacture at least 50 grams of methamphetamine, and the Court could presume that she would not have pleaded guilty pursuant to a plea agreement stipulating certain facts, such as the quantity of Sudafed that she purchased, unless those facts were actually true. [Doc. 6 at 6]. The government also notes that Petitioner has not alleged that her plea was unknowing or involuntary. [*Id.*].

"The focus in failure-to-investigate claims . . . is the reasonableness of [counsel's] investigation (or lack thereof)." *English v. Romanowski*, 602 F.3d 714, 726 (6th Cir. 2010). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. But "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. Here, Petitioner cannot show that her counsel performed deficiently in failing to investigate her claim that someone used her identification to purchase Sudafed, or raise this issue before the court, since Petitioner herself had already informed law enforcement that she had purchased the pseudoephedrine amount that was attributed to her. Counsel did not perform deficiently in failing to investigate or argue a claim that would be belied by Petitioner's own prior statements to law enforcement.

Moreover, Petitioner cannot show that she was prejudiced by her counsel's failure to investigate or raise her claim that some of the Sudafed was purchased by someone who

10

stole her identification. Notably, Petitioner had already admitted to law enforcement that she purchased 479.28 grams of pseudoephedrine which she provided to co-defendants and used to manufacture at least 239.64 grams of actual methamphetamine. [Crim. doc. 117 at 3-4]. Petitioner again conceded that she was responsible for this amount of pseudoephedrine, and resulting amount of methamphetamine under oath at the plea hearing. [Crim. doc. 228 at 8]. Furthermore, even if Petitioner was not personally responsible for at least 50 grams of methamphetamine, she was charged with, and pleaded guilty to, involvement in a conspiracy, and therefore, she was responsible for drug quantities that were manufactured by her co-conspirators, not only those amounts that were personally attributable to her pseudoephedrine purchases. *See United States v. Watson*, 620 F. App'x 493, 510 (6th Cir. 2015) (stating that the district court correctly instructed the jury that the relevant quantity of drugs was the quantity involved in the overall conspiracy). Thus, even if counsel investigated, found evidence supporting Petitioner's claim, and raised this argument, Petitioner would not have been responsible for a lesser drug quantity, as it is undisputed that the conspiracy to which she pled guilty involved the manufacture of methamphetamine well in excess of 50 grams. Accordingly, Petitioner has not shown that her counsel was constitutionally ineffective as to Claims 1 and 2.

Claim 3:

In Claim 3, Petitioner argues that her counsel was ineffective in failing to negotiate, or attempt to negotiate, a beneficial plea agreement. [Doc. 1 at 6]. She states that, had counsel done so, her sentence would have been considerably lower. [*Id*.].

The government responds that Petitioner's claim ignores that the plea agreement she received resulted in dismissal of all but one count of the indictment, and that she had no constitutional right to a plea bargain. [Doc. 6 at 6]. The government states that neither Petitioner nor her attorney could have compelled the United States to accept an agreement that was more favorable to Petitioner than the plea offer that she accepted. Finally, the government notes that Petitioner has not alleged any reasonable probability that, but for counsel's alleged errors, she would have insisted on going to trial. [*Id*.].

Petitioner has not set forth facts illustrating that her attorney was deficient for failing to negotiate a plea agreement or that, had counsel attempted, a plea agreement would have been offered which would have resulted in a lesser sentence. Even assuming that Petitioner's counsel was deficient in failing to negotiate a better plea agreement, Petitioner has not demonstrated that she was prejudiced. The government asserts that it would not have offered any more favorable plea deal than the one that Petitioner accepted. Thus, there is no showing that any plea agreement with the government would have resulted in a lesser sentence or any other benefit to Petitioner, thus, she has not demonstrated any prejudice. Accordingly, she is not entitled to relief under § 2255 on this claim of ineffective assistance of counsel.

Claim 4:

In Claim 4, Elliot argues that she should receive a sentence reduction for her minor role in the offense, pursuant to Amendment 794 to U.S.S.G. § 3B1.2. [Doc. 1 at 8]. Elliot asserts that this amendment is automatically retroactive because it is a clarifying

amendment, and cites to *United States v. Quintero-Leyva*, 823 F.3d 519 (9th Cir. 2016) for this proposition. [*Id.*].

The government responds that subsequent changes to the Sentencing Guidelines can only be considered in the context of a motion under 18 U.S.C. § 3582(c)(2), not under 28 U.S.C. § 2255. [Doc. 6 at 7]. Moreover, even if construed as a § 3582(c)(2) motion, the government argues that the Sentencing Commission has not designated Amendment 794 as retroactive. [*Id.* at 8]. The government notes that *Quintero-Leyva* held only that Amendment 794 applies retroactively in direct appeals. [*Id.*].

Initially, the Court notes that "[t]he proper vehicle for an inmate to obtain a sentence reduction because of a change in the sentencing guidelines is 18 U.S.C. § 3582(c)(2), not 28 U.S.C. § 2255." *Cook v. United States*, Nos. 2:10-cr-26, 2:15-cv-212, 2016 WL 7321304, at *7 (E.D. Tenn. Dec. 14, 2016). Therefore, Petitioner should have made her request for a sentence reduction pursuant to Amendment 794 by means of a § 3582(c)(2) motion, not a § 2255 motion. Federal courts may exercise their discretion to ignore the incorrect label that a *pro se* litigant attaches to a pleading or motion and re-characterize it for the purpose of placing it within a legal category. *Castro v. United States*, 540 U.S. 375, 381 (2003). However, here, Petitioner raises claims that are properly brought in a § 2255 motion, as well as the instant claim, which would properly be brought in a § 3582(c)(2) motion, therefore, the court cannot construe her motion as a § 3582(c)(2) motion.

Nonetheless, even if the court could construe Petitioner's Claim 4 as a § 3582(c)(2) motion, her claim is without merit. "[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly

granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). One such statute is 18 U.S.C. § 3582(c)(2), which authorizes a sentence reduction when consistent with the policy statements in the Sentencing Guidelines, where a defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" via a retroactively applicable amendment. 18 U.S.C. § 3582(c)(2); *see also* 28 U.S.C. § 994(u); U.S.S.G. § 1B1.10.

"Section 1B1.10 of the Sentencing Guidelines contains the policy statement for § 3582(c)(2). Subsection 1B1.10(a) provides that the court may reduce the defendant's term of imprisonment if the applicable guideline range has subsequently been lowered by one of the amendments named in subsection (d)." *United States v. Bonds*, 839 F.3d 524, 529 (6th Cir. 2016); *see also United States v. Watkins*, 655 F. App'x 478, 479 (6th Cir. 2016) ("If no amendment listed in § 1B1.10(d) lowers the defendant's 'applicable guideline range,' then a sentence reduction is inconsistent with § 1B1.10 and, therefore, not authorized by § 3582(c)(2).") (citing U.S.S.G. § 1B1.10(a)(2)(B)).

Amendment 794 took effect November 1, 2015, approximately 3 months after Petitioner was sentenced, and clarifies the circumstances under which courts may grant a minor- or minimal-role reduction under U.S.S.G. § 3B1.2. The Sentencing Commission has not designated Amendment 794 as retroactive. U.S.S.G. § 1B1.10(d). Because Amendment 794 does not apply retroactively, § 3582(c)(2) does not authorize any reduction in Petitioner's sentence. *See Cook*, 2016 WL 7321304, at *7

Petitioner's reliance on *Quintero-Levya* is misplaced. First, the Court notes that opinions from another Circuit, while persuasive, are not binding on this Court. *See United States v. Hernandez*, 443 F. App'x 34, 40 (6th Cir. 2011); *Cross Mtn. Coal, Inc. v. Ward*, 93 F.3d 211, 217 (6th Cir. 1996). Further, *Quintero-Levya* and Sixth Circuit case law only recognize Amendment 794 to apply retroactively in direct appeals. *Quintero-Levya*, 823 F.3d at 523; *see also United States v. Carter*, 662 F. App'x 342, 349 (6th Cir. 2016). Thus, Amendment 794 has not been designated for retroactive application to cases on collateral review, and Petitioner is not entitled to relief on this claim.

## IV. CONCLUSION

For the reasons stated above, Petitioner's § 2255 motion [doc. 1, crim doc. 786] will be **DENIED**.

## V. CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. A petitioner may appeal a final order denying a § 2255 motion only if she is issued a COA, and a COA should issue only where the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(a), (c)(1)(B), (c)(2). When a claim has been dismissed on the merits, a petitioner must show that reasonable jurists would find the assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right, as jurists of reason would not debate the Court's findings as to any of

Petitioner's claims. Because Petitioner has failed to make such a showing, a COA **SHALL NOT ISSUE**.

The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed in forma pauperis on appeal. *See* Fed. R. App. P. 24(a)(3)(A). An order consistent with this opinion will be entered.

s/ Thomas W. Phillips  
SENIOR UNITED STATES DISTRICT JUDGE